IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                               Case No. 2:19-cr-20205-MSN-7

JACQUEZ REVERAND,

    Defendant.
_____

**ORDER ADOPTING REPORT AND RECOMMENDATION AND ORDER DENYING DEFENDANT REVERAND'S MOTION TO SUPPRESS**
_____

    This cause comes before the Court on Defendant Jacquez Reverand's Motion to Suppress. (ECF No. 466.) The motion was referred to the Chief Magistrate Judge for report and recommendation. (ECF No. 467.) On December 23, 2020, the Chief Magistrate Judge issued his Report recommending that Defendant's Motion be denied. (ECF No. 556 at PageID 2569.) Defendant Reverand timely filed his objections. (ECF No. 558.) The Government has submitted its Response. (ECF No. 584.) For the reasons below, the Court **ADOPTS** the Report and Recommendation and **OVERRULES** Defendant Reverand's objections. Accordingly, Defendant Reverand's Motion is **DENIED**.

**Background**[1]

---

[1] For purposes of this review, the Chief Magistrate Judge accurately recounted the facts of the case. Defendant Reverand's objections to the Chief Magistrate Judge's Report and Recommendation ("Report") do not relate to the Report's factual findings. Rather, they concern the Report's application of the law to the facts. In the absence of an objection, the Court adopts the Report's rendition of the facts. *See Thomas v. Arn*, 474 U.S. 140, 150–51 (1985).

On March 4, 2019, Memphis police officers responded to a call of shots fired in the vicinity of 1081 and 1083 N. Claybrook Street.[2]  (ECF No. 556 at PageID 2570.)  Memphis police officer Benjamin Huff was closest to the scene and reported hearing "what sounded like 'a hundred' shots" to dispatch.  (*Id.*)  Upon his arrival, Officer Huff came upon a male with a head wound running down N. Claybrook.  (*Id.*)  He also saw an individual, later identified as co-defendant Jeffery Sevier, exiting from 1081 N. Claybrook.  (*Id.*)  Officer Huff detained Defendant Sevier after a female victim at the scene pointed to Defendant Sevier and stated, "that's him, that's him."  (*Id.*)

Fellow Memphis police officer Maurice Cox arrived soon after.  (*Id.*)  Officer Cox then proceeded to take Defendant Sevier's statement.  (*Id.*) Defendant Sevier admitted to being at 1081 N. Claybrook to buy clothing and to witnessing the shooting.  (*Id.*) However, he could not confirm whether anyone else was inside 1081 N. Claybrook.  (*Id.* at PageID 2570–71.)

While Officer Cox spoke with Defendant Sevier, Officer Huff continued searching the surrounding area.  (*Id.*)  He discovered numerous shell casings located outside 1081 N. Claybrook.  (*Id.* at PageID 2571.)  Based on that, Officer Huff decided that officers needed to clear the duplex to ensure no one was injured inside.  (*Id.*)

Officer Huff, along with Officer Cox, knocked on the front door at both 1081 and 1083 N. Claybrook.[3]  (*Id.*)  There was no response at either residence.  (*Id.*)  Officers then proceeded to try to enter each residence to search for injured victims.  (*Id.*) Officers were only able to enter 1081 N. Claybrook at that time, though, because the front door to 1083 N. Claybrook was locked.[4]  (*Id.*)

---

2. The property at 1081 and 1083 N. Claybrook Street is a duplex.  (ECF No. 556 at PageID 2570.)

3. The front door at each residence consisted of an iron rod exterior door and a wooden door on the interior.  (ECF No. 556 at PageID 2571.)

4. The officers did not attempt to enter 1083 Claybrook because they lacked the tools to open the locked iron door.  (ECF No. 556 at PageID 2571 n.1.)  Also, per policy, a commanding

Once inside 1081 N. Claybrook, officers saw an additional shell casing on the floor. (*Id.*) They also observed apparent drug paraphernalia on a table inside.[5] (*Id.*) Officers did not locate anyone inside 1081 N. Claybrook. (*Id.*)

After searching 1081 N. Claybrook, officers continued to investigate the surrounding area while they waited for a commanding officer to arrive. (*Id.* at PageID 2572.) While doing so, they found additional shell casings on the street. (*Id.*) It was during this additional searching that Officer Huff discovered an unlocked side door leading into 1083 N. Claybrook. (*Id.*) As officers prepared to enter, they observed a bullet hole in the side of the house. (*Id.*)

Entering through the unlocked door, officers searched 1083 N. Claybrook for any injured individuals. (*Id.*) Officer Huff testified that he felt a gust a heat from inside 1083 N. Claybrook when he opened the door, indicating someone might be inside. (*Id.*) Once inside, officers saw a glass jar containing unidentified white powder near a lit stove and equipment for a surveillance system. (*Id.*) Officers did not find anyone inside 1083 N. Claybrook. (*Id.*) Officers entered 1083 N. Claybrook approximately eighty (80) minutes after they searched 1081 N. Claybrook. (*Id.*)

Officers did not seize any items at that time. (*Id.* at PageID 2587 n.10.) Instead, Memphis Police Sergeant D. Reed obtained search warrants for both 1081 and 1083 N. Claybrook. (*Id.* at PageID 2572.) Officers later executed these warrants, seizing a digital video recorder containing footage from cameras posted outside the duplex. (*Id.*)

This footage seized by Memphis police officers was later obtained by agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). (*Id.* at PageID 2573.)  Prior to

---

officer had to make the decision whether to contact the fire department to obtain the requisite tools to open the locked iron door. (*Id.*)

5. The drug paraphernalia consisted of marijuana grinders, a digital scale, and baggies. (ECF No. 556 at PageID 2571.)

the March 4 shooting, ATF agents suspected that 1081 and 1083 N. Claybrook might be linked to the criminal activity of the Memphis Mob street gang. (*Id.*) ATF agents believed that the duplex served as a "trap house" used to distribute narcotics. (*Id.*) Based on their investigation, an agent with the ATF obtained a search warrant for the surveillance footage seized by Memphis police. (*Id.*) The surveillance footage, as it turns out, captured the March 4 shooting.[6] (*Id.*) The footage showed several individuals firing into the back of a vehicle. (*Id.*) An ATF agent identified Defendant Jacquez Reverand as one of the shooters. (*Id.*) Co-defendant Gregory Martin was also identified as a shooter. (*Id.*) The footage also confirmed co-defendant Sevier as the person Officer Huff saw leaving 1081 N. Claybrook earlier that evening. (*Id.* at PageID 2573–74.)

On August 8, 2019, a grand jury indicted Defendant Reverand along with fifteen (15) co-defendants on a twenty-eight (28) count indictment. (*Id.* at PageID 2577.) Defendant Reverand specifically faces charges related to conspiracy to possess a firearm in relation to drug trafficking, conspiracy to distribute narcotics, and using a firearm in connection with drug trafficking. (*Id.*) Defendant Reverand's Motion seeks to suppress the evidence obtained from the officers' entry into 1081 and 1083 N. Claybrook on March 4, 2019. (ECF No. 456 at PageID 1765.) The Report recommends that Defendant Reverand's Motion be denied. (ECF No. 556 at PageID 2569.)

## **Standard of Review**

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district court duties to magistrate judges. *See United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001) (citing *Gomez v. United States*, 490 U.S. 858, 869–70 (1989)); *see also Baker v. Peterson*, 67 Fed. Appx. 308, 310 (6th Cir. 2003). For dispositive matters, "[t]he

---

6. This footage was admitted into evidence at the suppression hearing. (ECF No. 556 at PageID 2573.)

district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. §636(b)(1). After reviewing the evidence, the court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations. 28 U.S.C. § 636(b)(1). The district court is not required to review—under a *de novo* or any other standard—those aspects of the report and recommendation to which no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. *See id.* at 151.

Objections to any part of a Magistrate Judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Arn*, 474 U.S. at 147 (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute."). Each objection to the Magistrate Judge's recommendation should include how the analysis is wrong, why it was wrong and how *de novo* review will obtain a different result on that particular issue. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

A general objection, or one that merely restates the arguments previously presented and addressed by the magistrate judge, does not sufficiently identify alleged errors in the report and recommendation. *Id.* When an objection reiterates the arguments presented to the magistrate judge, the report and recommendation should be reviewed for clear error. *Verdone v. Comm'r of Soc. Sec.*, No. 16-CV-14178, 2018 WL 1516918, at *2 (E.D. Mich. Mar. 28, 2018) (citing *Ramirez v. United States*, 898 F. Supp. 2d 659, 663 (S.D.N.Y. 2012)); *Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*, 277 F. Supp. 3d 932, 965 (E.D. Tenn. 2017).

## **Discussion**

Defendant Reverand raises two objections to the Report's findings. First, Defendant

Reverand objects to the Report's conclusion that he lacked standing to challenge the search of 1081 and 1083 N. Claybrook. (ECF No. 558 at PageID 2593.) Second, Defendant Reverand challenges the Report's conclusion that the officers' warrantless entry into the duplex was permissible due to exigent circumstances, namely the emergency aid exception. (*Id.* at PageID 2594–95.) The Court will address each objection in turn. However, neither of Defendant Reverand's objections have merit. Defendant Reverand did not carry his burden of establishing he has standing to raise a Fourth Amendment challenge. Further, the Court is not persuaded by his argument that the emergency aid exception should not apply.

### A. Defendant Reverand lacked a reasonable expectation of privacy

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. To determine whether a Fourth Amendment violation occurred, the Court asks: "first, whether the alleged government conduct constitutes a search . . . and second, whether the search was reasonable." *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019). "[A] search occurs when a government official invades an area in which 'a person has a constitutionally protected reasonable expectation of privacy.'" *Id.* (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)); *see also United States v. Allen*, 720 F. App'x 254, 257 (6th Cir. 2018) ("The Fourth Amendment protects people, not places.") (quoting *Katz*, 389 U.S. at 351). "There are two requirements for a government intrusion to constitute a Fourth Amendment search: first, a person must exhibit an actual (subjective) expectation of privacy in the place or thing searched; second, the expectation is one that society is prepared to recognize as reasonable." *United States v. May-Shaw*, 955 F.3d 563, 567 (6th Cir. 2020) (quoting *Katz*, 839 U.S. at 361) (internal quotations omitted).

Whether an individual's expectation of privacy is reasonable is determined by looking at "the person's proprietary or possessory interest in the place to be searched or item to be seized[;] whether the defendant has the right to exclude others from the place in question; whether he had taken normal precautions to maintain his privacy; whether he has exhibited a subjective expectation that the area would remain free from governmental intrusion; and whether he was legitimately on the premises." *Allen*, 720 F. App'x at 257 (citation omitted).  If the party lacks a reasonable expectation of privacy, that party cannot challenge the constitutionality of a search. *See Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *United States v. Whitehead*, 415 F.3d 583, 587 (6th Cir. 2005) ("In order to claim Fourth Amendment protection, a defendant must therefore demonstrate that he possessed a legitimate expectation of privacy in the area searched.")

The area searched "need not be [the defendant's] 'home,' temporary or otherwise, in order for him to enjoy a reasonable expectation of privacy there." *Minnesota v. Olson*, 495 U.S. 91, 96 n.5 (1990).  Indeed, overnight guests can possess a reasonable expectation of privacy granting the party standing to assert a Fourth Amendment challenge. *Id.* at 96–97; *see also Minnesota v. Carter*, 525 U.S. 83, 90 (1998) ("[A]n overnight guest may have a legitimate expectation of privacy in someone else's home[.]") (citing *Olson*, 495 U.S. at 98–99).

It is clear from the record that 1081 and 1083 N. Claybrook were not Defendant Reverand's home. (ECF No. 556 at PageID 2574–75.)  However, Defendant Reverand did testify to occasionally staying at 1083 N. Claybrook.  (*Id.* at PageID 2574–75.) Considering this, Defendant Reverand's Motion hinges on whether he possessed a reasonable expectation of privacy granting him standing to assert a Fourth Amendment challenge.  The Report concluded that he did not. (ECF No. 556 at PageID 2583.)

The Report found the testimony provided by Defendant Reverand concerning his usage of

the 1081 and 1083 Claybrook not credible. (*Id.* at PageID 2576–77.) As a reason why, the Report cited to several inconsistencies in his testimony;[7] thus, the Report concluded that Defendant Reverand did not carry his burden of establishing that he possessed a reasonable expectation of privacy. (*Id.* at PageID 2580.)

As mentioned above, Defendant Reverand does not object to the Report's factual findings. Instead, Defendant Reverand disagrees with the Report's application of established law to the applicable facts. (ECF No. 558 at PageID 2594.) Defendant Reverand relies on two cases in objecting to the Report: *United States v. Washington*, 573 F.3d 279 (6th Cir. 2009) and *United States v. Waller*, 426 F.3d 838 (6th Cir. 2005). (*Id.*) This reliance is misplaced.

Outside a few conclusory statements, Defendant Reverand fails to articulate how these cases should alter the Report's conclusions. Indeed, *Washington* dealt with distinguishable facts because the defendant in that case "had been lawfully residing in the apartment" for several months prior to the police search at issue. 573 F.3d at 283. True, *Washington* does support the proposition that an overnight guest can have standing to challenge a search. *Id.* Defendant Reverand, though, fails to even cite which facts would support a finding of his status as an overnight guest in his objections to the Report. Rather, Defendant Reverand argues that "the Magistrate's ruling is not supported by the law" and cites "the testimony" at the suppression hearing as proof of Defendant Reverand's expectation of privacy without further explanation.

Further, Defendant Reverand's citation to *United States v. Waller* fares no better. Again,

---

7. For example, Defendant Reverand testified to keeping belongings at the duplex but did not specify if it was either 1081 or 1083 N. Claybrook. (ECF No. 556 at PageID 2575 n.7.) Further, Defendant could not provide a clear answer on how often he stayed at the residence or when he started staying. (*Id.* at PageID 2576.) Finally, Defendant Reverand testified to not being at the residence on March 4, 2019. (*Id.* at PageID 2577.) However, an ATF agent identified Defendant as one of the shooters on the surveillance footage. (*Id.*)

Defendant Reverand fails to explain how *Waller* applies or how the Report incorrectly applied the law to the facts at hand. The Sixth Circuit held in *Waller* that even a "transient" individual—meaning an individual who only used the residence for showering, changing of clothes, and for storing his belongings— can possess a reasonable expectation of privacy. 426 F.3d at 844. *Waller*, however, stands for a narrower proposition than the one Defendant Reverand furthers. The *Waller* Court addressed whether the defendant had a reasonable expectation of privacy that the luggage he stored at the residence "would not be subject to '[p]hysically invasive inspection.'" *Id. Waller* does not appear to grant standing to a transient individual to challenge the search of the entire residence. *See id.* ("[T]he district court erred in finding that Waller did not have authority to challenge the search of his luggage.")

Outside expressing a general disagreement with the Report's conclusions, Defendant Reverand has not explained how the Report is in error. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Moreover, the Court agrees with the Report's analysis. First, Defendant Reverand's own testimony undermines the credibility of his argument that he possessed a reasonable expectation of privacy. Defendant Reverand testified that he occasionally resided at the duplex at Claybrook. (ECF No. 556 at PageID 2574.) However, he also testified to not staying at the duplex on the night of March 3, 2019, and he was not present at the duplex at the time of the shooting.[8] (*Id.* at PageID2577.) Additionally, Defendant Reverand neither knew who owned the duplex nor who paid bills related to the residence. (*Id.* at PageID 2575.) Even more, Defendant Reverand did not have a key to either 1081 or 1083 N. Claybrook. (*Id.*)

Additional evidence provided from officers also undercuts Defendant Reverand's

---

8. As explained above, this testimony appears to be untrue. An ATF agent identified Defendant Reverand as one of the shooters in the video captured by the surveillance system. (ECF No. 556 at PageID 2573.)

9

argument for it appears that no one resided at 1081 and 1083 N. Claybrook. Officers testified that it appeared that no one stayed at the duplex. (*Id.* at PageID 2574.) As the Report notes, video footage from an officer's bodycam revealed the "stark interior" of the duplex. (*Id.* at PageID 2582.) Officer Huff testified that, outside a few couches at each residence, neither residence was furnished with beds or air mattresses. (*Id.* at PageID 2574.) Officer Cox further testified that it appeared to him that no one resided at 1081 N. Claybrook because there was no food, no items in the closets, and not even a shower curtain in the bathroom. (*Id.*) Moreover, an ATF agent testified that when agents conducted overnight surveillance on the duplex on prior occasions, no one stayed at the duplex. (*Id.*)

Accordingly, the Court agrees with the Report's conclusion that Defendant Reverand did not possess a reasonable expectation of privacy for either 1081 or 1083 N. Claybrook. (*Id.* at PageID 2583.) Although Defendant Reverand testified that he occasionally stayed at the residence, he did not do so on March 3, 2019— the night before the search. (*Id.* at PageID 2577.) Further, he testified to not being at the residence on the day of March 4, 2019. (*Id.*) And finally, Defendant Reverand did not know who owned the residence and did not possess his own key. (*Id.* at PageID 2582.) Thus, Defendant Reverand lacked a reasonable expectation of privacy at either residence. *See United States v. Harris*, 255 F.3d 288, 295 (6th Cir. 2001) ("Although an overnight guest may possess a legitimate expectation of privacy in a residence being searched, a temporary visitor to a residence may claim no such protection."). Therefore, Defendant Reverand's objections are **OVERRULED**. The Court **ADOPTS** the Report's reasoning and conclusion.

### B. The emergency aid exception applies

Assuming *arguendo* that Defendant Reverand could challenge the search of the duplex, the Report further concludes that Defendant Reverand's Motion be denied for the additional reason

that exigent circumstances justified officers' entry into both 1081 and 1083 N. Claybrook. (ECF No. 556 at PageID 2583.) It is well established that "a warrantless search is *per se* unreasonable subject only to a few specifically established and well-delineated exceptions." *United States v. Trice*, 966 F.3d 506, 512 (6th Cir. 2020) (citation omitted). "'Exigent circumstances' are one such exception." *Johnson v. City of Memphis*, 617 F.3d 864, 868 (6th Cir. 2010) (citing *Mincy v. Arizona*, 437 U.S. 385, 390 (1978)).

"One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). "[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id.*; *see also United States v. Huffman*, 461 F.3d 777, 783 (6th Cir. 2006) ("[T]o satisfy the exigent-circumstances exception in the present case, [the government] must show that there was a risk of serious injury posed to the officers or others that required swift action."). "It requires only an objectively reasonable basis for believing that a person within [the house] is in need of immediate aid." *Michigan v. Fischer*, 558 U.S. 45, 47 (2009) (internal quotations and citations omitted).

The Report concluded that the emergency aid exception applied to justify the officers' entry into both 1081 and 1083 N. Claybrook. (ECF No. 556 at PageID 2584–88.) Defendant Reverand's objection to the Report does not challenge the Report's finding as to 1081 N. Claybrook. Therefore, the Court **ADOPTS** the Report's conclusion that the emergency aid exception applies to officers' entry into 1081 Claybrook.

Defendant Reverand, however, objects to officers' entry of 1083 N. Claybrook, arguing that the passage of eighty (80) minutes nullified any exigency justifying a warrantless entry. (ECF No. 558 at PageID 2594–95.) On this point, the Report reasoned that the emergency aid exception

still applied despite the passage of time. (ECF No. 556 at PageID 2587.) In determining whether exigent circumstances were present, the Court looks at the "totality of the circumstances and the inherent necessities of the situation at the time." *Huffman*, 461 F.3d at 783 (citing *United States v. Rohrig*, 98 F.3d 1506, 1511 (6th Cir. 1996)).

Here, the totality of the circumstances establishes that the officers' belief was reasonable. Defendant Reverand relies solely on the fact that there was an eighty (80) minute delay in arguing that exigent circumstances did not exist; in doing so, he ignores the context in which it occurred.[9] The delay arose because officers needed approval from a supervisor to enter the residence through the locked front door. (ECF No. 556 at PageID 2587.) Further, officers did not discover the unlocked side door into 1083 N. Claybrook until later. (*Id.*) Once they did, they then proceeded to quickly perform another welfare check. (*Id.*)

Defendant Reverand's objection also fails to consider other facts that lead officers to believe an individual might be injured inside. For example, take the events that preceded officers' entry into 1083 N. Claybrook. Officer Huff testified to hearing numerous gun shots earlier that evening, (*Id.* at PageID 2570), increasing the likelihood that someone could be injured by a stray bullet. Indeed, Officer Huff had already observed two victims at the scene. (*Id.*) There were also numerous shell casings on 1083 N. Claybrook's front porch. (*Id.* at PageID 2586.) Moreover, no one confirmed whether 1083 Claybrook was empty.

---

9. Indeed, the passage of time alone is not dispositive and the case Defendant Reverand cites, *United States v. Huffman*, 461 F.3d 777 (6th Cir. 2006) bears this truth out. (ECF No. 558 at PageID 2594.) In *Huffman*, officers arrived **nearly eight (8) hours** after shots had been fired. 461 F.3d at 780. The officers did not know this, however, because dispatch did not relay that information; instead, dispatch "immediately requested police officers to respond, warning the officers that shots had been fired and that someone inside the house might be potentially shot, injured, or killed." *Id.* In light of this, the decision in *Huffman* turned on "what the officers knew when they arrived." *Id.* at 785.

Further, as officers approached the side door of 1083 N. Claybrook, they noticed a bullet hole in the wall. (*Id.* at PageID 2587.) Then, when Officer Huff cracked open the door, he felt a gust of heat emanating from inside, indicating someone could be inside. (*Id.*); *see also cf. Huffman*, 461 F.3d at 784 ("Upon peering through the window, the officers also observed bullet holes on the walls inside the house as well as furniture, suggesting that the house was lived in at the time of the incident."). Taken in totality, these facts establish that it was reasonable to believe that someone inside 1083 N. Claybrook could need immediate emergency aid despite the lapse of time.

For these reasons, Defendant Reverand's objection that exigent circumstances did not exist for officers to enter 1083 Claybrook is **OVERRULED**. The Court **ADOPTS** the Report's conclusions as to this issue.

## Conclusion

For the reasons above, the Court **ADOPTS** the Report and **OVERRULES** Defendant Reverand's objections. Defendant Reverand's Motion is **DENIED**.

**IT IS SO ORDERED**, this 1st of March, 2021.

*s/ Mark Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE